# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Classic Site Solutions, Inc. ) ASBCA Nos. 58376, 58573
)
Under Contract No. W912DR-11-C-0022 )

APPEARANCES FOR THE APPELLANT: Mark S. Dachille, Esq.
Nicole L. Campbell, Esq.
  Huddles Jones Sorteberg & Dachille, P.C.
  Columbia, MD

Drew W. Colby, Esq.
  Partridge Snow & Hahn, LLP
  Westborough, MA

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
  Engineer Chief Trial Attorney
William J. Selinsky, Esq.
Scott C. Seufert, Esq.
Richard P. White, Esq.
  Assistant District Counsel
  U.S. Army Engineer District, Baltimore

## OPINION BY ADMINISTRATIVE JUDGE CLARKE
## ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties each move for summary judgment in what is referred to as the "Tank Mix" claim, ASBCA Nos. 58376, 58573. The contract involved construction of a test track for military vehicles, including tanks, at Aberdeen Proving Ground, Maryland. These particular motions involve questions of contract interpretation relating to the type of pavement required by the contract. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We grant partial summary judgment in favor of the government and deny appellant's motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. Contract No. W912DR-11-C-0022 (0022) was awarded to CSSI on 31 May 2011 (R4, tab 4 at 2, tab 11). The contract required CSSI to construct an automotive vehicle test and evaluation facility (ATEF) at Aberdeen Proving Ground, Maryland (APG), that included a 4.5 mile paved test track (R4, tab 4 at 5). The contract included three contract line item numbers (CLINs): CLIN 0001 Construction of ATEF Phase II; CLIN 0002

Bituminous Conc. Wearing Course; and CLIN 0003 Bituminous Conc. Binder Course (*id.* at 3, 4).

2. The project construction specifications included section 32 12 16, Hot-Mix Asphalt (HMA) for Roads (R4, tab 7), that reads in pertinent part:

> 2.3 MIX DESIGN
>
> > a. HMA classified as Tank Mix shall be used for all bituminous concrete pavements. Tank Mix is used exclusively at Aberdeen Proving Ground for heavy-duty pavements, and has been locally available for several years. The nominal maximum aggregate size (NMAS) shall be 19.0 mm for the binder course and 12.5 mm for the wearing course. The Tank Mix producer shall have at least 5 years of experience in producing the submitted Tank Mix, and a record of successful production and use of such product on the APG Garrison. If Tank Mix is no longer locally available, then the Contractor shall develop the mix design as specified in Part b. or c., below.

(R4, tab 7 at 13) Subparagraph b. provides that the contractor shall develop a mix design in accordance with the guidance therein. Subparagraph c. allows the use of "MdDOT Superpave hot mix" in accordance with the guidance therein. (*Id.*)

3. The contract incorporated the FAR 52.236-5, MATERIAL AND WORKMANSHIP (APR 1984) clause (R4, tab 4 at 7), which provides in pertinent part:

> References in the specifications to equipment, material, articles, or patented processes by trade name, make, or catalog number, shall be regarded as establishing a standard of quality and shall not be construed as limiting competition. The Contractor may, at its option, use any equipment, material, article, or process that, in the judgment of the Contracting Officer, is equal to that named in the specifications, unless otherwise specifically provided in this contract.

4. On 16 January 2012, CSSI submitted its mix design for approval (supp. R4, tab 33 at 2). The submittal included two letters from Maryland Paving, Inc., indicating that it would supply mix design "option 'C'" as approved by the Maryland State Highway Administration (*id.* at 6). The submittal was disapproved:

The mix design does not satisfy Part 2.3 "A" of the project specifications. The specifications require that "Tank Mix" hot mix asphalt be used by the contractor on this project, provided it is still locally available. To-date, this mix design is locally available from Independence Materials, of Aberdeen, Md. Therefore, the contractor cannot exercise options "B" or "C" for this project. However, this submission by the Contractor is an effort to exercise option "C"; altering a MdDOT Superpave mix design to meet the project specifications.

Please contact a local supplier and submit a "Tank Mix" design that has been successfully used for at least 5 years on the APG Garrison.

(Supp. R4, tab 33 at 3)

5. On 20 February 2012, CSSI objected to the government's disapproval of the mix design submittal stating among other things that the government was improperly requiring a brand name product (R4, tab 19).

6. On 4 April 2012, CSSI submitted two separate requests for mix design approval (supp. R4, tabs 34, 35). The first submission was the same mix design that was submitted on 16 January 2012 that had been disapproved. This mix design was again disapproved with the same rationale. (Supp. R4, tab 34 at 2) The second submission that offered the "Tank Mix" formula from Independence Construction Materials (ICM), of Aberdeen MD, was approved by the government (supp. R4, tab 35 at 3). CSSI subsequently supplemented its approved submission to respond to the comments (supp. R4, tabs 36, 37). The ICM tank mix design was approved (supp. R4, tab 37 at 1).

7. On 10 May 2012, CSSI's counsel submitted to the government a "Written Notice of Change" for "upwards of $500,000" resulting from the government's order that CSSI use ICM's "Brand name" tank mix in lieu of the less expensive alternative mix design initially submitted by CSSI for approval (R4, tab 21).

8. CSSI provided ICM's local tank mix and on 8 June 2012, CSSI submitted a certified claim for $846,236.60 as a result of the government's direction that CSSI use ICM's tank mix design (R4, tab 22).

9. CSSI submitted an appeal based on a deemed denial on 5 November 2012. The Board docketed the appeal as ASBCA No. 58376 on 6 November 2012. The claim was formally denied by contracting officer's final decision dated 5 December 2012 (R4, tab 1). CSSI filed a notice of appeal from that final decision on 26 February 2013 and it

3

was docketed as ASBCA No. 58573 and consolidated with ASBCA No. 58376 and other CSSI appeals under the contract.

## DECISION

*Contract Interpretation/Extrinsic Evidence*

We recognize that the parties submitted much more detailed factual analyses than reflected in our SOFs above. The parties refer to numerous documents and affidavits/declarations from witnesses. Our SOFs reflect the minimum facts necessary for the Board to evaluate the parties' contentions; we do not rely on the extrinsic evidence submitted by the parties.[1] This is because a motion for summary judgment based on an issue of contract interpretation may only be granted if there is no ambiguity requiring reliance on extrinsic evidence. *Dixie Construction Co.*, ASBCA No. 56880, 10-1 BCA ¶ 34,422 at 169,918 ("Legal questions of contract interpretation are amenable to summary resolution, unless there is an ambiguity that requires the weighing of extrinsic evidence" and "extrinsic evidence will not be received unless there is such an ambiguity."). An ambiguity exists when there are two reasonable interpretations of the language under consideration. *Teg-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (When a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous, and we may then resort to extrinsic evidence to resolve the ambiguity.). Additionally, summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Any significant doubt over factual issues, and all reasonable inferences, must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Dixie*, 10-1 BCA ¶ 34,422 at 169,918.

Thus the Board must attempt to interpret paragraph 2.3a. of specification section 32 12 16, quoted in SOF ¶ 2 above, based on the language alone. If we conclude there is more than one reasonable interpretation, the language is ambiguous and summary judgment must be denied. *Dixie*, 10-1 BCA ¶ 34,422 at 169,919.

*Contentions of the Parties*

Appellant contends that the government's demand that CSSI provide local tank mix was a compensable change for three alternative reasons: (1) Specification 32 12 16, Hot-Mix Asphalt (HMA) for Roads, allowed CSSI to provide one of three options: either local "Tank Mix" (subparagraph a.), or develop its own mix design (subparagraph b.), or provide MdDOT approved Superpave Mix (subparagraph c.) (app. mot. at 21-32); (2) A "local tank mix" was not available (app. mot. at 42); or (3) Pursuant to the Material and

---

[1] CSSI moved to strike paragraphs in Mr. Babcock's declaration. Since we do not rely on his declaration or any other affidavits/declarations, CSSI's motion is moot.

4

Workmanship clause, provide a mix design that was "equal" to local tank mix (app. mot. at 44-57). CSSI also argues that the government's specification requiring a proprietary mix design is too restrictive and the government failed to comply with regulations to obtain approval of the use of a proprietary mix design (app. mot. at 32-37).

The government contends that Section 32 12 16 cannot be interpreted to allow submission in accordance with subparagraphs b and c if the tank mix in subparagraph a is available. Since a local tank mix design from a producer that successfully produced and used the product for at least five years was available, CSSI was obligated to use that product (gov't mot. at 10-13).

*Discussion*

*Restrictive Solicitation and Regulatory Violations*

CSSI complains that the specifications were too restrictive and the government violated procurement regulations (app. mot. at 32-36). CSSI's remedy for overly restrictive specifications was to file a protest which it failed to do. *C&D Construction, Inc.*, ASBCA Nos. 48590, 49033, 97-2 BCA ¶ 29,283 at 145,697 ("C&D's remedy was to file a bid protest on the basis that the solicitation unduly restricted competition. We do not have jurisdiction to make such a determination."). (Citations omitted)

*Interpretation of 2.3 MIX DESIGN, subparagraph a.*

Paragraph 2.3 MIX DESIGN consists of five sentences; we discuss the three relevant sentences. The first sentence of paragraph 2.3a. reads: "HMA classified as Tank Mix shall be used for all bituminous concrete pavements" (SOF ¶ 2). This language is clear and unambiguous and susceptible to only one reasonable interpretation. Subject to the rest of subparagraph a., hot-mix asphalt classified as "Tank Mix"[2] must be used. We reject CSSI's argument that the words "classified as" somehow detract from the clear mandatory meaning of the first sentence as unreasonable (app. mot. at 23-29). The second sentence is a statement on historical usage of tank mix at APG and is relevant only in that it indicates tank mix "has been locally available for several years." The third sentence identifies "nominal maximum aggregate size" for the binder and wearing courses of tank mix and is not relevant to our interpretation. The fourth sentence reads, "[t]he Tank Mix producer shall have at least 5 years of experience in producing the submitted Tank Mix, and a record of successful production and use of such product on the APG Garrison." This sentence is clear and unambiguous and susceptible to only one reasonable interpretation. It requires that the tank mix producer have 5 years of successful "production" of tank mix and successful "use" of tank mix on APG. The fifth

---

[2] For our purposes, we need not delve into what "Tank Mix" is because it would require consideration of extrinsic evidence.

5

sentence reads, "[i]f Tank Mix is no longer locally available, then the Contractor shall develop the mix design as specified in Part b. or c., below." This sentence is clear and unambiguous and susceptible to only one reasonable interpretation. It creates a condition precedent to the use of subparagraph b. or c. Therefore, we reject CSSI's argument that the absence of the words "only" or "only if" creates an ambiguity (app. mot. at 29-32). We disagree with CSSI's interpretation of the language of paragraph 2.3 MIX DESIGN that it had the right to choose any one of the three options in paragraphs 2.3a., b. and c. regardless of the availability of local tank mix. Accordingly we grant summary judgment in favor of the government on this point. Appellant was not entitled under the terms of the specification to use options b. or c.

*Availability of Local Tank Mix*

CSSI argues that tank mix was not locally available because it "does not meet the ATEF II Recipe" (app. mot. at 41-42). We consider "availability" to be a disputed question of fact and not susceptible for decision on summary judgment.

*The Material and Workmanship Clause*

The contract includes FAR 52.236-5, MATERIAL AND WORKMANSHIP (APR 1984) (SOF ¶ 3). The clause specifically states that identification by brand name shall not limit competition. We have held that the purpose of the clause is to promote competition. *Southern Playground, Inc.*, ASBCA Nos. 43797, 43798, 02-1 BCA ¶ 31,853; *CPF Underground Utilities, Inc.*, ASBCA No. 33436, 87-1 BCA ¶ 19,596 at 99,123 (The purpose of the clause is "to discourage the potentially monopolistic practice of demanding the use of brand-name or designated articles in government contract work."). CSSI claims that the government's insistence on ICM's tank mix cost an additional $846,236.60 (SOF ¶ 8) and that the government should bear that cost because CSSI offered a less expensive, functionally equivalent design mix.

Inclusion of the Material and Workmanship clause qualifies the general rule that, after award, the government is entitled to strict compliance with every technical requirement of the contract's specifications. The clause provides a contractor the right to submit a substitute product for a proprietary item called for in the contract's specification absent a warning that only the proprietary item will be accepted. *North American Construction Corp.*, ASBCA No. 47941, 96-2 BCA ¶ 28,496 at 142,298. Use of the word "shall" is not a sufficient warning. *Minority Enterprises, Inc.*, ASBCA No. 45549 *et al.*, 95-1 BCA ¶ 27,461 at 136,827. Language such as, "*NOTWITHSTANDING* any other provision of the contract, no other product will be acceptable" is sufficient warning to preclude substitution. *Maron Construction Co.*, ASBCA No. 53933, 05-1 BCA ¶ 32,904 at 163,026. The government did not include such a warning in paragraph 2.3 MIX DESIGN (SOF ¶ 2).

6

The contractor bears the burden of proof that it is entitled to submit a substitute item. The contractor must prove:

> (1) the specifications are proprietary, (2) appellant submitted a substitute product along with sufficient information for the contracting officer to make an evaluation of the substitute, and (3) the proposed substitute meets the standard of quality represented by the specifications.

*North American,* 96-2 BCA ¶ 28,496 at 142,299; *Blount Brothers Corp.,* ASBCA No. 31202, 88-3 BCA ¶ 20,878 at 105,575. The record as it presently exists does not allow the Board to conclude that CSSI has satisfied this burden of proof and therefore whether it is entitled to an equitable adjustment for the contracting officer's refusal to allow CSSI to substitute for the "Tank Mix" alleged to be proprietary.

## CONCLUSION

For the reasons stated above, we grant partial summary judgment in favor of the government as to the interpretation of the Mix Design clause as set forth herein. We deny the remainder of the government's motion. We deny CSSI's motion.

Dated:  26 June 2014

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

7

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58376, 58573, Appeals of Classic Site Solutions, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals